FRANK GRANT, Respondent, v. NATIONAL RAILWAY SPRING COMPANY, Appellant.

*Negligence — servant engaged in piling iron injured by the collapse of the pile — the master is not liable where the work is negligently done nor because of a defective light.*

A master who directs two of his workmen to pile a quantity of iron bars is not liable for personal injuries sustained by one of such workmen in consequence of the pile having fallen because the work of piling was improperly done, irrespective of whether the improper piling was the fault of the injured workman, or of his fellow-workman, or of both of them.

The fact that an electric arc light, which was designed to light the place where the work of piling was being performed, was defective to the knowledge of the master, and that because of such defect the light went out just as the workmen were engaged in placing a bar of iron upon the pile, and just before the pile toppled over, does not establish liability upon the part of the master, where no evidence is given showing that the defective light, or the absence of light, was the proximate cause of the falling of the pile.

APPEAL by the defendant, National Railway Spring Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 16th day of November, 1901, upon the verdict of a jury for $2,708.33, and also from an order entered in said clerk's office on the 11th day of November, 1901, denying the defendant's motion for a new trial made upon the minutes.

This appeal was transferred from the fourth department to the third department.

The action was brought to recover damages for personal injuries sustained by the plaintiff while working for the defendant in its machine shop. In the complaint it is alleged that "on or about the 26th day of November, 1897, said plaintiff, without any fault or negligence on his part, and solely by the fault and negligence of said defendant in failing and omitting to furnish said plaintiff with proper and necessary tools and proper, necessary and safe appliances and proper, safe and necessary light, was severely and permanently injured," etc. Upon the trial at the close of the plaintiff's testimony the court allowed the plaintiff to amend his complaint so as to conform to the proof by adding after the words "proper, safe and necessary light," the words "and a proper and safe place in which to work." No question was made upon the trial as to the sufficiency of this complaint, or that the allegations were of conclusions instead of facts.

Plaintiff was engaged, as he claims, by direction of the superintendent of the defendant in assisting to unload a carload of steel bars from a box car standing upon a track in a wing of defendant's shop and in piling the iron bars so unloaded therein. The bars were from twelve feet to eighteen feet in length and were from three to four inches wide and from a quarter to three-quarters of an inch thick. The bars weighed from 130 to 150 pounds each,

according to their length.  They were piled between two racks erected in the wing for holding this kind of steel, and these racks were full or nearly full, so that the bars which the plaintiff was aiding to unload were piled on the ground against the western side of the eastern rack, there being at that time already a pile on the ground against the rack on the other side.  Only about three feet of space remained, according to the plaintiff's statement, between the steel already piled on the ground and the east rack, against which the plaintiff and another employee by the name of Conley were piling this carload.

The claim of the plaintiff on the trial was that the place where he was required to pile this steel was not properly lighted at the time.  The accident happened shortly before five o'clock on the evening of November 26, 1897.  The steel bars were piled in this passageway four or five tiers of rails wide, and the pile was about two and a half or three and a half feet high when in some manner it toppled over and the plaintiff was caught by the pile falling upon his left leg and he suffered a compound fracture of it.  It began to get dark at that time of year in the shop, so that the electric lights there were lighted about four o'clock.  There were two arc lights in the wing, the one put in for the purpose of lighting the particular place where the steel was being piled being about forty or fifty feet from the place where the plaintiff was injured.  The claim of the plaintiff on the trial was that this arc light was defective so that the upper carbon did not hang straight so as to come properly in juxtaposition with the lower carbon, and much evidence was given as to the flickering of this light, as to its being intermittent and as to its going out at times because of these alleged defects.

The only questions submitted to the jury with respect to the defendant's negligence were whether the defendant was negligent in not providing the plaintiff a safe place to work by reason of not having sufficient light, and whether or not the cause of the accident was the lack of such light.  The jury found a verdict for the plaintiff, and from the judgment entered thereon and from an order denying a motion for a new trial this appeal is taken.  Further facts are stated in the opinion.

*Theodore E. Hancock*, for the appellant.

*C. N. Bulger*, *F. J. McNamara* and *L. C. Rowe*, for the respondent.

CHESTER, J.:

The theory of plaintiff's counsel, in support of his claim that the defendant is liable for plaintiff's injuries, appears to be that the light went out at a critical moment when he and Conley were in the act of placing the bar of steel upon the pile, so that they could not see where to place it properly, and consequently they, without fault on their part, placed it in such a position upon the pile as to topple it over and cause the injuries, and that if the light had been burning the plaintiff could have seen and avoided the falling pile. It is urged that under these circumstances the questions of the defendant's negligence and of plaintiff's contributory negligence were for the jury to determine.

When, in the plaintiff's testimony, he first mentioned the manner in which he received his injuries, he said : "I was putting this bar of steel down and just turned to go away when the pile I was making came over and caught me on the left leg about half way between the knee and ankle; my leg wasn't cut, but it jammed me up against the pile of steel opposite to the pile I was under."

Afterwards he said : "It was dark just about the time we started to lay that bar down on the top of the pile; we thought we put that bar on top of the pile; * * * the moment we were laying this last bar on the pile the light went out; I was caught; I didn't notice anything after that; I didn't notice that the electric light was out after I was caught, but I remember at the particular moment that I was placing that last bar there that the light went out."

There was a considerable conflict in the evidence as to the character of the light and as to when, if at all, it went out, as related to the time of the injury, so that if the liability of the defendant depends upon these questions they were undoubtedly for the jury to determine. But I do not think, upon the proof here, it does so depend.

We may assume for the purpose of this appeal that the light was defective to the knowledge of the defendant, and that because of this defect it went out, as the plaintiff claims, just as he was in the

act of placing the bar on the pile, and yet I think the case falls far short of establishing the defendant's liability.

The injuries were received by the fall of the pile which the plaintiff and his coemployee — Conley — were making. The plaintiff must be assumed to have brought to that work ordinary skill in performing it. Indeed he testified : " I claim to be a man of more than ordinary intelligence ; I have worked in factories all my life. I have worked around machinery more or less all my life."

If the pile fell because of its being improperly piled, it was either the fault of the plaintiff or of his coemployee, or of both of them, and the defendant, under well-settled rules of law, would not be liable.

The plaintiff testified as to the manner of piling and with reference to the falling of the pile : " I don't know whether those piles slipped from the top ; I don't know whether they slid from the top or bulged out from the middle ; we had it piled up in about four piles ; I couldn't say how many strips there were in a pile ; we didn't have over six to eight piles ; I am not positive that it was just four ; I couldn't say whether it was five, it wasn't six ; whether it was more than three I don't know ; whether it was 4 or 5 ; I don't know ; we piled these about 2½ or three feet high ; I don't know which it was, near three feet I think ; that is what I think it is ;    *    *    * we didn't pile one pile up first and then pile up the next ; we piled the four piles all up at the same time ; we started at the back end next to the rack ; we put probably three or four there, then started the next so that these four piles Conley and I piled up as if it was one pile, that is, all at the same time."

Another witness for the plaintiff testified that " they piled those strips up as you would take boards and pile one on top of another."

Another witness for the plaintiff testified that " they piled them I should judge three feet or three feet and a half high ; the steel was four pieces in width ;    *    *    * all the four piles tipped over ; they all slid into one mass."

Still another witness for the plaintiff, who had piled considerable steel like this, said on cross-examination : " In my judgment it wasn't safe to pile it more than a foot high ; nobody had told me how high to pile it ; as far as the height was concerned I exercised my own judgment."

Evidence was given as to the character and condition of the ground upon which the plaintiff was directed to pile the steel, the claim being that it was soft and uneven and, therefore, an improper place to pile such heavy material, but the court rightly, as we think, refused to submit that question to the jury as the plaintiff had worked upon the place in question four hours in daylight and knew as much of the situation as the defendant and ought to have known of its safety or lack of it.

There was no evidence given as to the propriety of piling these narrow strips of steel from two and a half to three and a half feet high without any cross pieces to support or bind them, and every reasonable inference to be drawn from the evidence as to the manner of piling, in the absence of any evidence as to the cause of the fall, is that the fall was caused by defective piling, for which the defendant was not liable.

There is absolutely no evidence connecting the fall with the defective light or with the absence of light as a proximate cause, so I think there was no evidence upon which the court could properly have submitted the question of the defendant's negligence to the jury.

The jury upon the evidence as it stands have been left to guess or conjecture that the fall might have been caused in putting the last rail on the pile in some way in the absence of light as to cause the pile to topple over when the pile might have fallen in the same way because of its own inherent defects when the last rail was put on, even if the light had been perfect and was burning properly. The jury have also been left to guess that the plaintiff might have escaped from the falling pile if the light had been burning.

This verdict is wholly the result of speculation and conjecture on the part of the jury, and it is not based upon any evidence of defendant's negligence that resulted in plaintiff's injuries. The judgment entered thereon should, therefore, be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.